HARRIS COUNTY, Texas, Appellant,

v.

William McFERREN, Individually, and as Next Friend of Shannon McFerren, a Minor, Appellee.

No. 01–89–00326–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 8, 1990.

Rehearing Denied April 12, 1990.

Mike Driscoll, County Atty., Frank Sanders, Asst. County Atty., Houston, for appellant.

Merry Miller, Houston, for appellee.

Before WARREN, MIRABAL and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a plaintiff's judgment entered in a premises liability action after the court disregarded a jury answer favorable to the defendant. We reverse and render a take-nothing judgment.

Appellee, William McFerren, individually, and as next friend of his minor daughter, Shannon McFerren, sued appellant, Harris County, Texas, under the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.022 (Vernon 1986), as a result of injuries Shannon received at a county-owned park.

Shannon McFerren had attended a high school pep rally and bonfire on November 17, 1983, at Sylvan Beach Park, and was standing in front of a picnic table shelter afterward, waiting for her grandmother to pick her up. A boy had climbed on top of the shelter while his brother stood next to it, shaking one of its pillars back and forth. The shelter collapsed and struck Shannon's leg, breaking her right ankle. It is undisputed that Sylvan Beach Park is owned, operated, and maintained by Harris County.

In answers to questions submitted, the jury found that the picnic table shelter that fell on Shannon's leg constituted a dangerous condition (Question 1); that the County did *not* have actual knowledge of the dangerous condition (Question 2); that the County failed to make the dangerous condition reasonably safe (Question 7); and, based on Question 7, that the County was 100 percent liable (Question 12). The trial court disregarded the jury's answer to Question 2 and entered judgment for the jury's monetary award to the McFerrens based on: (1) the jury's findings of a dangerous condition, the County's negligence in failing to make the dangerous condition reasonably safe, the County's 100 percent liability, and proximate cause; and (2) the trial court's holding, as a matter of law, that the County knew of the dangerous condition. The plaintiffs did not plead gross negligence on the part of the County, and *no jury question on the issue was requested or submitted.* Because the jury found in answer to Question 2 that the County did not have actual knowledge of the dangerous condition, the jury did not answer the predicated question that followed as to whether the County failed to warn of the condition.

Harris County's second point of error is dispositive of the appeal, and we therefore consider it first. In its second point of error, Harris County asserts that the trial court erred in disregarding the jury's answer to Question 2.

A trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes such an affirmative finding. *New Process Steel Corp. v. Steel Corp.*, 703 S.W.2d 209, 216 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Neither may the trial court disregard a jury's answer that has some support in the evidence, even though the great weight and preponderance of the evidence may be to the contrary. *Gulf, C. & Santa Fe Ry. v. Deen*, 158 Tex. 466, 470, 312 S.W.2d 933, 937, *cert. denied,* 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958).

A contention on appeal that an answer to a jury question should not have been disregarded presents a "no evidence" point. *Harper Bldg. Sys. v. Upjohn Co.*, 564 S.W.2d 123, 125 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.) (where some evidence of probative force existed to support a jury's finding of lost profits, an award of damages for lost profits should not have been disregarded); *see also Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex. 1970) (before a judgment n.o.v. is proper, there must be no evidence of probative force upon which the jury could have made the finding relied upon). To sustain the trial court's action in granting a motion to disregard the jury's answer to a specific question, an appeals court must determine that there is no evidence upon which the jury could have made the finding. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986).

In acting on a motion to disregard a jury answer, all evidence must be considered in the light most favorable to the party against whom the motion is sought, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Alm,* 717 S.W.2d at 593; *New Process Steel Corp.,* 703 S.W.2d at 216 (where evidence was sufficient to support the jury's finding on damages, granting of a motion to disregard was improper); *Berlow v. Sheraton Dallas Corp.*, 629 S.W.2d 818, 821 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (when there was some evidence to support jury's finding that the hotel's negligence was the proximate cause of the loss, judgment n.o.v. was improper).

A trial court may disregard a jury finding on a question only if it has no support in the evidence, Tex.R.Civ.P. 301, or if it is rendered immaterial by other findings. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967); *New Process Steel Corp.,* 703 S.W.2d at 213.

The Texas Tort Claims Act establishes that the question of the County's lack of knowledge of the defect is material. Section 101.022 provides that if a claim arises from a premises defect, the governmental unit owes the claimant "only the duty that a private person owes to a licensee on private property unless the claimant pays for the use of the premises." Tex.Civ. Prac. & Rem.Code Ann. § 101.022 (Vernon 1986); *see also Vela v. Cameron County*, 703 S.W.2d 721, 724 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (swimmer was a licensee rather than a business invitee where he did not pay for use of county beach). In our case, Shannon did not pay for the use of the premises.

A private person owes licensees on private property the duty not to injure them by willful or wanton conduct, or by gross negligence. *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974). As stated earlier, gross negligence was not pleaded or submitted to the jury. However, apart from willful or wanton conduct, or gross negligence, when the licensor has actual knowledge of the dangerous condition and the licensee does not, the licensor has the duty either to warn the licensee or to make the condition reasonably safe. *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 562–63 (Tex.1976). The duty to warn licensees of dangerous conditions arises only in those instances where the licensor knows of the condition likely to cause injury. *Tennison,* 509 S.W.2d at

562. Thus, a jury finding of no actual knowledge of the dangerous condition becomes material when, as here, there is no duty other than to avoid injuring the claimant willfully, wantonly, or through gross negligence.

■ Having determined that the County's knowledge, or lack of knowledge, of the dangerous condition is a material issue, we next consider whether there is evidence of probative force in the record to support the jury's finding that the County did not have actual knowledge. In making this determination, we consider only the evidence favorable to appellant, and disregard all contrary evidence. *Alm*, 717 S.W.2d at 593. If there is any evidence of probative force to support the jury's answer, then the trial court erred in disregarding the answer, even though the evidence may not have been clear, convincing, and unambiguous. *Mitchell v. Porter*, 349 S.W.2d 785, 786 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.).

From our examination of the record, we find, as summarized below, that there is evidence favorable to the jury's answer that appellant did not have actual knowledge of the dangerous condition of the park shelter.

■ Two County employees testified that when the shelter legs were installed, the legs were placed in holes three to four feet deep, which were then filled with concrete. John Parker, the assistant park superintendent, testified that the legs on this shelter were set in concrete below the ground and were installed properly. He testified that he personally checked all the equipment in the park after Hurricane Alicia, and within two months before Shannon's accident. There was no water standing around the picnic shelters after the hurricane. As far as Parker could tell, the equipment was perfectly safe, and the picnic shelter in question was still in good condition. He knew of no other injuries involving such shelters, and had received no complaints about the condition of the park equipment after Hurricane Alicia.

Parker also testified that the picnic shelter tables had been used many times, that they had been checked along with all the other playground equipment in the time period between Hurricane Alicia and Shannon McFerren's accident, and that he had never seen any holes, gaps, or "wallowed-out places" (such as plaintiffs' witnesses testified about) on the sides of the posts of any of the picnic shelters. After the hurricane, everything in the park was cleaned and inspected; the park was completely clean when it was opened prior to Shannon's accident. As of the day of the occurrence in question, Parker was not aware of anything wrong with the picnic shelters; if there had been a problem, the shelters would have been removed.

Park employee Marshall Ojeda testified that the picnic shelter in question was inspected after Hurricane Alicia, and "everything seemed to be okay." Ojeda checked the shelters before the hurricane, and found them to be sturdy and firm. He further testified that no one had ever complained about the shelters at Sylvan Beach.

Park superintendent Michael Parrott testified that the tables were solid in the ground; that if anyone had reported to him that a shelter had moved or shifted, it would have been replaced or its roof removed; and that the county had neither experienced problems with, nor received complaints about, shelters at any other county park.

We find that this testimony constitutes some evidence of probative force to support the jury's negative answer to Question 2, namely, that the County had no actual knowledge of the picnic shelter's dangerous condition. The trial court therefore erred in disregarding the jury's answer.

The McFerrens rely upon *Prairie View A & M Univ. v. Thomas*, 684 S.W.2d 169 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), as authority that the court below appropriately found as a matter of law that the County had actual knowledge of the dangerous condition of the picnic shelter.

In *Thomas*, the plaintiff was severely burned by steam pipes and standing water when she fell at night into an excavation

dug by the defendant university near a sidewalk on its campus. The jury found the university liable for breach of duty to the plaintiff-licensee "with respect to warnings, lights, signs, and covers around the hole." *Thomas,* 684 S.W.2d at 171. However, the issues as to the university's liability were submitted to the jury under a standard of ordinary care, rather than under the licensor-licensee standard of willful, wanton, or grossly negligent conduct. On the plaintiff's motion, the trial court held "as a matter of law that [the university] had actual notice of the excavation where the incident occurred as the evidence demonstrates that appellant created the condition and under the Texas Tort Claims Act is deemed to have actual notice of the defect." 684 S.W.2d at 171. The court of appeals affirmed, holding that "an exception to the licensor-licensee standard of care was created, imposing on the appellant [university] the duty to warn the plaintiff or make the condition reasonably safe." *Id.*

*Thomas* is readily distinguishable from the situation before us. In *Thomas,* unlike here, no jury question was submitted inquiring about the university's knowledge of the dangerous condition, and nothing in the record showed that the university had no knowledge of the dangerous condition. The trial court's holding was a deemed finding in support of the judgment on the verdict. *Thomas,* equated the university's "actual notice of the excavation" with knowledge of the dangerous condition. While *Thomas* did not explicitly so state, we conclude from the facts stated that the reason for that court's creation of an exception to the licensor-licensee standard of care was the trial court's finding *on undisputed facts* that the excavation was a dangerous condition *per se.* In contrast, the picnic table shelter in our case was not hazardous from its inception, but erected for use by park patron licensees, and long used for its intended purpose. No contention has been made that the shelter was a dangerous condition *per se.* Hence, *Thomas* is inapplicable authority.

■ We next consider whether the trial court's error in disregarding the answer was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. Tex.R.App.P. 81(b)(1). The jury answered that the County failed to make the dangerous condition reasonably safe (Question 7), and that such failure was negligence (Question 8). Based on these answers, the jury found the County 100 percent liable for the damages (Question 12).

As previously stated, liability to a licensee for a premises defect must be predicated on a finding, on the one hand, of willful, wanton, or grossly negligent conduct, *or,* on the other hand, that the licensor had actual knowledge of the dangerous condition and failed to warn or make the condition reasonably safe. *Lower Neches Valley Auth.,* 536 S.W.2d at 562–63. In light of the jury's finding that there was no actual knowledge of the dangerous condition on the part of the County, we turn to consider whether the alternate basis for recovery exists, that is, whether the County's conduct was willful, wanton, or grossly negligent.

However, the McFerrens did not plead willful, wanton, or grossly negligent conduct, and did not request a question regarding these issues. Ordinary negligence was the only standard submitted for the jury's consideration.

Question 8 asked if the failure to make the condition reasonably safe constituted *negligence,* not *gross negligence.* Ordinary negligence was the only standard submitted for the jury's consideration. Accordingly, Question 8 does not inquire about a proper standard of care; neither does it provide a basis of recovery to impose liability upon a licensor for a premises defect. *Tennison,* 509 S.W.2d at 562.

Because the jury did not find that the County had actual knowledge of the picnic shelter's dangerous condition, and was not asked to find gross negligence, no basis exists for the County's liability. The error in disregarding the jury's answer therefore did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1).

The County's second point of error is sustained.

The discussion of the McFerrens' sole cross-point does not meet the criteria for publication, Tex.R.Civ.P. 90, and is thus ordered not published.

The trial court's judgment is reversed, and judgment is hereby rendered that the McFerrens take nothing.

The McFerrens' cross-point is overruled.

The trial court's judgment is reversed, and judgment is hereby rendered that the McFerrens take nothing.